UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEREK KENNEY,

               Plaintiff,

  -v-                                    6:11-CV-790
                                        (DNH/ATB)

ANTHONY CLAY, JAMES LORENZONI,
EDGAR BEAUDIN, JOHN DOES 1-5, and
THE CITY OF GLOVERSVILLE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Law Offices of Elmer Robert Keach, III, P.C.<br>*Attorneys for Plaintiff*<br>One Pine West Plaza - Suite 109<br>Albany, NY 12205 | Elmer R. Keach, III, Esq. |
| Lemire, Johnson Law Firm<br>*Attorneys for Defendants*<br>P.O. Box 2485<br>2534 Route 9<br>Malta, NY 12020 | Gregg T. Johnson , Esq.<br>April J. Laws, Esq. |

DAVID N. HURD
United States District Judge


## TABLE OF CONTENTS

I.  INTRODUCTION.................................................... 2

II. BACKGROUND...................................................... 3

III. LEGAL STANDARDS................................................ 9

     1.        Defendants' Motion for Summary Judgment......................... 9
            A.     Fifth Amendment Right Against Self-Incrimination.............. 11

                i. Absolute Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                ii. Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       B.     State Tort Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                i.  Intentional Infliction of Emotional Distress. . . . . . . . . . . 14

                ii. Negligent Infliction of Emotional Distress. . . . . . . . . . . . . 15

       C.     Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       D.     Remaining Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    2.         Plaintiff's Motion to Amend the Complaint. . . . . . . . . . . . . . . . . . . . . . 16

III. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1.         Defendants' Motion for Summary Judgment. . . . . . . . . . . . . . . . . . . . . . 16

       A.     Fifth Amendment Claim - Third Cause of Action. . . . . . . . . . . . . . 16

                i. Absolute Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                ii. Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       B.     State Tort Claims - Sixth Cause of Action. . . . . . . . . . . . . . . . . . . 20

       C.     Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       D.     Remaining Claims - Fourth and Seventh Causes of Action. . . . . . . 22

    2.         Plaintiff's Motion to Amend the Complaint. . . . . . . . . . . . . . . . . . . . . . 23

IV.        CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

      Plaintiff Derek Kenney brought this action pursuant to 42 U.S.C § 1983, alleging that defendants, Gloversville Police Department ("GPD") officers and the city itself, violated his civil rights.  At issue is defendants' motion for summary judgment and plaintiff's cross-motion to amend the complaint.

      Defendants collectively moved for summary judgment, requesting dismissal of the complaint in its entirety.  Plaintiff opposed, but consented to dismissal of his federal and state law claims for false arrest; federal and state law claims for malicious prosecution; all

claims against defendant retired GPD Officer James Lorenzoni; and any <u>Monell</u> claim against defendant retired GPD Officer Edgar Beaudin. <u>See</u> ECF No. 91.

Defendants have moved for summary judgment as to plaintiff's third cause of action, in which he alleges that his right against self-incrimination under the Fifth Amendment was violated; his fourth cause of action, a <u>Monell</u> claim against the City of Gloversville; his sixth cause of action, alleging intentional infliction of emotional distress and negligent infliction of emotional distress claims against all remaining defendants; and his seventh cause of action, alleging negligent supervision and retention of an employee against Officer Beaudin and the City of Gloversville. ECF No. 70. Defendants likewise raise absolute and qualified immunity defenses, and seek dismissal of plaintiff's state law tort claims and request for punitive damages. <u>Id</u>. As a result of defendant's motion, plaintiff made a cross-motion to amend the complaint. ECF No. 83. Oral arguments were heard in Utica, New York.

## II. <u>BACKGROUND</u>

Prior to this action, plaintiff was no stranger to the Gloversville Police Department ("GPD"). In fact, he concedes that he been arrested more times that he can recall. Plaintiff's Statement of Material Facts, ECF No. 74, 2 ("Pl.'s Stmt. M. F.").[1] Defendants paint plaintiff as "a long-time, homeless transient of the City of Gloversville with an extensive violent criminal history." Defendants' Motion for Summary Judgment, ECF No. 70, 10 ("Defs.' Mtn. Summ. J.). Plaintiff maintains that he is "affectionately known as the "Town Drunk." Plaintiff's Opposition to the Motion for Summary Judgement, ECF No. 75, 7 ("Pl.'s Opp. Mtn. Summ. J."). Further arguing that his numerous arrests were for "minor

---

[1] Pagination corresponds to that which was assigned by CM/ECF.

offenses" while intoxicated, such as disorderly conduct and assaulting garbage cans.  Id.

With this relationship between plaintiff and GPD in mind, the story of this case began around 11:59 p.m. on July 6, 2010, when GPD was notified that an unresponsive man was on the front lawn of 143 Bleecker Street in Gloversville.  Defs.' Mtn. Summ. J., 12.  Police responded to find a decedent, Brian Morrison, face down in a pool of blood with a small puncture wound on the right side of his chin.  Id.  The area was secured as a homicide scene.  Id.

Plaintiff, visibly intoxicated, arrived at the scene shortly thereafter.  Pl.'s Stmt. M. F., 6.  He attempted the cross the police tape, but GPD stopped plaintiff, directing him to bypass the crime scene and proceed to his destination.  Id.  Defendants contend that plaintiff was "combative" and lingered at the crime for more than thirty minutes.  Id.  When he did leave the immediate vicinity, he went around the block, continued to watch the scene and smoked marijuana while drinking a beer.  Id.

From July 7 through July 9, 2010, defendants collected statements from self-proclaimed eye witnesses and persons who had interacted with plaintiff on the night of the murder.  Of note, one such eye witness claimed that he saw plaintiff attack the decedent in the head at the location of the crime scene.  Defendants' Statement of Material Facts, ECF No. 70-23, ¶ 45 ("Defs.' Stmt. M. F.").  And the mother of plaintiff's son and girlfriend of six years, Rebecca Abraham reportedly told the police that plaintiff left her apartment at 166 Bleecker Street in an angry and intoxicated state on the night of Morrison's murder.  Pl.'s Stmt. M. F., 9.[2]  Defendants collected other statements, including one from plaintiff's

_____

[2] For the purposes of narrative clarity, it should be noted that Abraham lived at 166 Bleecker Street and the body of the decedent was found at 143 Bleecker Street.

brother-in-law Edward Sherry, in which Sherry averred that plaintiff allegedly admitted to murdering the decedent. Id. at 10. After confirming whether the eye witness would have been able to see plaintiff commit the murder from his front porch as he had reported, defendants concluded that they had reason to believe that they eye witness's story was credible. Defs.' Stmt. M. F., ¶¶ 61-68.

With such incriminating information gathered from plaintiff's associates and a purported eye witness to the crime, GPD determined an interview with plaintiff was appropriate. Thus, on the afternoon of July 9, 2010, GPD located plaintiff at a friend's home and sought to question him regarding the homicide. Pl.'s Stmt. M. F., 13. And from this point onward, the parties dispute nearly all relevant facts. When the police found plaintiff, he was drinking a beer, but the parties contest whether he was visibly intoxicated or under the influence of alcohol, illegal drugs, or prescription anti-psychotic medications. Id. Plaintiff later stated that he had consumed "approximately seventy (70) beers, eight (8) glasses of gin, and smoked marijuana and crack" before the police took him to the station for questioning. Defs.' Stmt. M. F., ¶ 133; Pl.'s Stmt. M. F. 36.

Defendants contend that plaintiff was coherent, walked on his own, communicated clearly, followed all commands and was able to understand every aspect of the transport to the station and the interview. Defs.' Stmt. M. F., ¶¶ 72-76. However, plaintiff contends that plaintiff exhibited consistently irrational and bizarre behavior: making sexually explicit comments about defendant Clay's wife and sister; stating that his DNA would be on defendant Clay's wife's lips; stating that he had filmed himself having sex with defendant Clay's wife and sister; stripping out of all of his clothes; and walking around the police station naked. Pl.'s Stmt. M. F., 14.

Both parties agree that plaintiff was not handcuffed during the ride to the police station and that he walked freely into the station without assistance from defendants. Id. at 17-18.

Defendant Clay was the lead investigator and conducted the interview while Detective Michael Calbet took contemporaneous notes. Id. at 19. The parties dispute whether Det. Calbet was directed not to record portions of the interview. Id. at 20. And to that end, plaintiff points to the undocumented, initial forty-five minute portion of the interview in which plaintiff was allegedly read his Miranda rights. Id. Indeed, Det. Calbet, although stating he was directly outside the interview room and could hear everything, could not remember ever hearing defendant Clay read plaintiff his Miranda rights. Id. Both parties agree that the interview was not filmed, although the video recording equipment is readily available to officers. Pl.'s Stmt. M. F., 20-21. Moreover, both parties agree that plaintiff never signed a written Miranda waiver, as is standard GPD protocol. Id. at 22.

There are disputes regarding whether Det. Calbet was able to accurately record plaintiff's statements. Id. Det. Calbet admitted that plaintiff was speaking quickly and he was outside the room, making it difficult to record everything. Id. Det. Calbet ostensibly took notes for five hours while plaintiff was interviewed. Id. at 22-23. Plaintiff disputes this and indicates that eight pages of notes over the course of five hours seems scant if Det. Calbet was accurately transcribing everything. Id. at 23.

The parties further dispute whether the interview should have been recorded. Indeed, defendants note that they discussed whether the interview should be recorded in light of the gravity of the crime. Defs.' Stmt. M. F., ¶ 94. Defendants concluded it

was not necessary, because GPD had not yet implemented a policy of recording interviews.  Id. ¶ 95.  Plaintiff points to conflicting testimony from defendants; specifically, that Defendant Beaudin "admitted that there were polices and procedures in place at the time of [p]laintiff's interrogation and that the interrogation should have been recorded."  Pl.'s Stmt. M. F., 23.  Plaintiff's phone calls were likewise not recorded.  Id. at 23-24.

Defendants aver that, at 2:58 p.m., defendant "Clay advised plaintiff that he needed to read plaintiff the Miranda warnings," plaintiff agreed to listen, and Clay "read plaintiff the Miranda warnings off of a Miranda card."  Defs.' Stmt. M. F., ¶¶ 100-02.  Further, plaintiff responded "yup, I am" when asked the final question, "now that I have advised you of your rights, are you willing to answer my questions?"  Id. ¶ 103.  Plaintiff vehemently denies that any of the foregoing occurred.  Pl.'s Stmt. M. F., 24-29.  And although Det. Calbet's notes memorialize defendant Clay issuing the Miranda warning, plaintiff asserts that defendant Clay instructed Det. Calbet to falsely document the Miranda warning and that Det. Calbet had no independent recollection of Capt. Clay reading plaintiff his rights.  Id.  It is undisputed that Capt. Clay did not obtain a signed Miranda waiver from plaintiff, in violation of GPD policy, and has no explanation for failing to do so. Id.  Plaintiff does admit that he had been issued Miranda warnings in the past and was familiar with the rights found therein.  Id.

Thereafter, defendants allege that plaintiff asked to leave the station, but his request was denied because a search warrant was being obtained for his person and clothing.  Defs.' Stmt. M. F., ¶ 110.  At or around 3:52 p.m., defendant Clay began questioning plaintiff regarding his whereabouts on the day of the homicide in question.

7

Id. ¶ 111.  However, plaintiff contends that he had already made many requests to leave and was denied each time.  Pl.'s Stmt. M. F., 31.  The parties further dispute whether plaintiff made sexually explicit and nonsensical statements during this time period, e.g., stating that he had a tattoo memorializing the eight bodies of child molesters he had killed; refusing to tell his whereabouts during the time frame of the murder; making various phone calls, in which the police overhead him admitting to the murder and saying that he didn't need a lawyer; saying that he remembered seeing the victim on the evening of the murder with blood gushing from his neck area; and admitting "yeah, I stabbed him right there," indicating his lower lip and chin area.  Defs.' Stmt. M. F., ¶¶ 109-29; Pl.'s Stmt. M. F., 30-35.  Plaintiff disputes that these events occurred and maintains that he was intoxicated, impaired and otherwise incoherent during the interview.  Pl.'s Stmt. M. F., 32-35.  However, defendants point to the minutia of details plaintiff was able to recall regarding the interview, i.e., that he was given Kentucky Fried Chicken for dinner and details of the interview room.  Defs.' Stmt. M. F., ¶ 135.  In response, plaintiff contends that he did not recall these details until he had fully detoxified later that night.  Pl.'s Stmt. M. F., 39.

Defendant Clay ended the interview at approximately 7:00 p.m., plaintiff was placed under arrest, and plaintiff was turned over for processing at the Fulton County Jail.  Defs.' Stmt. M. F., ¶ 130.  Recordings of plaintiff's phone calls at the Fulton County Jail began around 9:00 p.m. that evening.  Pl.'s Stmt. M. F., 36.

Importantly, plaintiff points to the preliminary bail hearing, in which plaintiff's statements during the interview with defendant Clay and his alleged confession were used.  Id., 48.  And these same statements and alleged confession were also

8

introduced during a grand jury proceeding. Id., 47. Plaintiff was later indicted by a grand jury on murder and assault charges. Defs.' Stmt. M. F., ¶ 136. Plaintiff was held in jail until the state court dismissed the charges against him "for defects in the proceedings before the Grand Jury," and plaintiff was thereafter released from jail on October 26, 2010. Id. ¶ 142; Defs.' Mtn. S. J., 5.

Defendants contend plaintiff remains a suspect in the ongoing investigation into the Morrison homicide because of statements he made to eye witnesses, journalists, and officers following his release from prison. Id. ¶¶ 142. Plaintiff disputes this and contends he only remains a suspect in the absence of substantial exonerating evidence. Pl.'s Stmt. M. F., 40-41.

### III. **LEGAL STANDARDS**

#### 1. **Defendants' Motion for Summary Judgment**

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). Such a fact is genuinely in dispute only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of genuine issue of material fact as to a dispositive issue. Celotex, 477 at 323. If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Anderson, 477 U.S. at 250 (stating that once the movant meets its initial burden, the opposing party must show, through affidavits or otherwise, that a material issue of fact remains for trial). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48.

Importantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Likewise, "credibility determinations [and] the weighing of evidence . . . are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) (internal citation and quotation omitted). In making this determination, a court resolves any ambiguities or inferences to be made from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553.

## A. <u>Fifth Amendment Right Against Self-Incrimination</u>

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." <u>Kastigar v. United States</u>, 406 U.S. 441, 444-45 (1972) (footnotes omitted). In <u>Kastigar</u>, the Supreme Court declared that the Amendment's "sole concern is to afford protection against being forced to give testimony leading to the infliction of [criminal] penalties." <u>Id</u>. at 453 (internal quotation marks and citation omitted).

However, neither the Constitution nor the Supreme Court's decision in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), requires the reading of the four warnings as a necessary condition to the admission of a defendant's inculpatory statement. As the Second Circuit has recognized, "the Miranda warnings are prophylactic only; they are not constitutional rights in themselves. The reading of (or failure to read) Miranda warnings only has a presumptive effect on whether or not an individual's Fifth Amendment rights may have been violated." <u>Weaver v. Brenner</u>, 40 F.3d 527, 534 (2d Cir. 1994). As the Supreme Court has recognized, the Miranda warnings are only "suggested" and "were not intended to 'create a constitutional straitjacket.'" <u>Michigan v. Tucker</u>, 417 U.S. 433, 444, (1974) (quoting <u>Miranda</u>, 384 U.S. at 467) (where despite police failure to read the defendant his fourth Miranda warning – regarding the right to have an attorney appointed for him if he

11

could not afford one – the Court did not view that failure as a bar to the use of the fruits of the defendant's statements at trial)).

"The Fifth Amendment's self-incrimination clause bars the government from using a compelled confession in any criminal case."  Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007).  Thus, the key inquiry for Fifth Amendment purposes is whether the statement introduced in a judicial proceeding was obtained, not by failure to read a defendant the Miranda warnings, but by coercion – an inquiry determined by the totality of the circumstances.  See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); Haynes v. Washington, 373 U.S. 503, 513-14 (1963); 18 U.S.C. § 3501(b) (listing the Miranda warnings as only two of five factors for the trial judge to weigh in determining voluntariness and providing that the absence of any of the five factors need not be dispositive);[3] see also Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340 (2d Cir. 1998).

In Weaver, the Second Circuit concluded that a coerced statement did not have to be introduced at trial to violate a plaintiff's Fifth Amendment rights.  40 F.3d 527.  Instead, the court held "that use or derivative use of a compelled statement at any criminal proceeding against the declarant violates that person's Fifth Amendment rights; use of the statement at trial is not required."  Id. at 535 (emphasis in original).  The court concluded that the use of a coerced confession before a grand jury was a violation of the

---

[3] "The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.  The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession."  18 U.S.C. § 3501(b).

self-incrimination clause: "[t]he use of a coerced confession <u>before a grand jury</u> plainly makes the [person who gave the statement] a witness against himself in a criminal case, one leading to the infliction of criminal penalties against him.  Such use, if the confession is found to have been coerced, violates [the declarant's] constitutional rights . . . ."  <u>Id</u>. at 536 (emphasis added).

### i. **Absolute Immunity**

In <u>Rehberg v. Paulk</u>, the Supreme Court announced the bright line rule that a grand jury witness, including a law enforcement officer, "has absolute immunity from any § 1983 claim based on the witness' testimony," even if that testimony is perjurious.  132 S. Ct. 1497, 1506 (2012).  This expressly extended to grand jury witnesses, including police officers, the same immunity that had previously been enjoyed by witnesses at trial.  <u>Id</u>. This holding was consistent with the understanding that, despite its broad terms, 42 U.S.C. § 1983 does not effect a radical departure from common-law immunities.  <u>Id</u>. at 1502; <u>see also</u> <u>Pierson v. Ray</u>, 386 U.S. 547, 554-55 (1967); <u>Coggins v. Buonora</u>, 776 F. 3d 108 (2d Cir. 2015).  Thus, in this Circuit, even where a police officer has perjured himself before a grand jury, he still enjoys the absolute immunity afforded to grand jury witnesses and trial witnesses.  <u>See</u> <u>Coggins</u>, 776 F. 3d at 112-13.

When a police officer claims absolute immunity for his grand jury testimony under <u>Rehberg</u>, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony.  <u>Coggins</u>, 776 F. 3d at 113. If the claim exists independently of the grand jury testimony, it is not "based on" that testimony.  <u>Rehberg</u>, 132 S. Ct. at 1506.  "Conversely, if the claim requires the grand jury

13

testimony, the defendant enjoys absolute immunity under Rehberg." Coggins, 776 F. 3d at 113.

### ii. Qualified Immunity

Qualified immunity shields police officers, like other public officials, from the specter of civil liability "when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Weaver, 40 F.3d at 532-33 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Even when the right in question is clearly established at the time that the alleged unlawful conduct occurred, an official is still entitled to immunity where it was objectively reasonable for him to believe that the conduct in question was lawful. See Coggins, 776 F. 3d at 114; Niemann v. Whalen, 911 F. Supp. 656 (S.D.N.Y. 1996).  And where there is a dispute about the material facts, this question must be resolved by the fact finder.  See Kerman v. City of New York, 374 F.3d 93, 109 (S.D.N.Y. 2004).

### B.  State Tort Claims

### i.  Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress under New York common law are (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  See Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir.1999) (citing Howell v. New York Post Co., 612 N.E.2d 699 (N.Y. 1993)).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance."  Id.  Only where the alleged conduct "has been so outrageous in

14

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" will a court allow a claim for intentional infliction of emotion distress to go forward.  Id.

## ii. **Negligent Infliction of Emotional Distress**

Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress under one of two theories: (1) the bystander theory; or (2) the direct duty theory, both of which require a threat or danger of physical harm.  See Mortise v. United States, 102 F.3d 693, 696 (2d Cir.1996).  Under the bystander theory, a plaintiff may recover when "(1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family."  Id.  Plaintiff may recover under a direct duty theory when "she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety."  Id.

## C. **Punitive Damages**

"Punitive damages are meant to 'punish the defendant for his willful or malicious conduct and to deter others from similar behavior.'"  Milfort v. Prevete, 3 F. Supp. 3d 14 (E.D.N.Y. 2014) (quoting Sulkowska v. City of New York, 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001)).  "Punitive damages are available in a §1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Lee v. Edwards, 101 F.3d 805, 808 (2d. Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  "The fact that the constitutional violation does not warrant an award of compensatory damages is not a basis for denying an award of punitive damages."  New

15

Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d. Cir. 2001) (internal citations omitted). However, "to be entitled to an award of punitive damages, a claimant must show a positive element of conscious wrongdoing." Id. (quoting Kolstad v. American Dental Ass'n, 527 U.S. 526, 538 (1999)) (internal quotations omitted).

### D. Remaining Claims

It is well settled that a district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment. Am. Hotel Int'l Group Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373 (S.D.N.Y. 2009) (citing Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.")).

### 2. Plaintiff's Motion to Amend the Complaint

Under Rule 15(a), leave to amend a pleading "shall be given freely when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has interpreted Rule 15 to permit such amendments unless (1) the party seeking to amend has unduly delayed; (2) the party seeking to amend is acting with a dilatory motive; (3) the proposed amendment would cause undue prejudice to the opposing party; or (4) the proposed amendment would be futile. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Whether to allow a party to amend its complaint is within the discretion of the district court. Id.

## IV. DISCUSSION

### 1. Defendants' Motion for Summary Judgment

#### A. Fifth Amendment Claim - Third Cause of Action

At no point do the parties dispute whether plaintiff's detention and interview was custodial in nature. Thus, for the purposes of determining this summary judgment motion,

the Fifth Amendment attached the duration of the interview. See Niemann, 911 F. Supp. 656. However, parties agreed on very little beyond this point and there exist genuine questions of material fact as to whether plaintiff's alleged confession was ever obtained and if so, whether it was obtained by coercion.

At a summary judgment stage, credibility determinations are not appropriate. See Reeves, 530 U.S. at 150. Instead, the focus is on the facts alleged and those facts are viewed in the light most favorable to the non-moving party. Plaintiff, the non-movant, has alleged sufficient facts to raise questions regarding the nature of his alleged confession. However, it is essentially plaintiff's word against the word of the defendants.

First, plaintiff maintains that he was never read his Miranda rights. Defendants dispute this fact, but concede a written Miranda waiver was not obtained. Likewise, plaintiff points to the fact that the custodial interview was not videotaped, as is standard protocol for GPD. However, defendants contest this and aver that video recording was not readily available at the time of the custodial interview in 2010. Instead, defendants contend that the officers followed appropriate GPD protocol by taking contemporaneous handwritten notes of the interview.

In any event, it is undisputed that plaintiff's alleged confession was used against him at the grand jury proceeding, in which defendants' secured an indictment for murder against him. This alone gives rise to a violation of plaintiff's Fifth Amendment rights. Weaver, 40 F.3d at 536 (where the use of a coerced confession before a grand jury was a violation of the self-incrimination clause).

Defendant would have the Court accept their argument that the confession was not coerced and because the charges were later dropped against plaintiff, no constitutional

17

harm resulted. Yet, it is undisputed that plaintiff's statements were used against him during both a preliminary bail hearing and a grand jury proceeding. And, at this summary judgment stage, there exist enough facts to call into question whether (1) the alleged confession ever occurred; and if so (2) was it coerced. Taken together, it cannot be said that a fact finder would be unable to find in plaintiff's favor. Indeed, plaintiff has raised geniune issues of fact best left to the fact finder to weigh and make the requisite credibility determinations.

### i. **Absolute Immunity**

Defendants contend that defendant Clay is entitled to absolute immunity for any and all statements made during the grand jury proceeding and that he is therefore entitled to absolute immunity for that part of plaintiff's § 1983 claim based upon his grand jury testimony. However, plaintiff points to the preliminary bail hearing, in which his alleged statements to defendant Clay during the custodial interview were used as the predicate for setting bail. These were the same statements and alleged confession introduced during a grand jury proceeding. Plaintiff further argues that these statements, both at the bail hearing and grand jury, lead to his indictment for murder and assault. And plaintiff was held in jail until the state court dismissed the charges against him, releasing him from jail on October 26, 2010.

Because plaintiff has put into issue the bail hearing in which the alleged confession was utilized, it cannot be said that his § 1983 claim is "based on" the grand jury testimony alone. Rehberg, 132 S. Ct. at 1506. Indeed, in the context of Fifth Amendment claims, the bail hearing has been deemed a crucial part of the "criminal case" against a criminal defendant, no different that the grand jury proceeding, trial and sentencing. See Higazy,

505 F. 3d at 171-73 ("The status of bail hearings under other constitutional provisions supports the conclusion that such a hearing is part of a criminal case against an individual against whom charges are pending."); cf. Coleman v. Alabama, 399 U.S. 1, 9-10 (1970) (where, in the context of the Sixth Amendment, the bail hearing was deemed a critical stage of the criminal case in which a criminal defendant was entitled to counsel); Stack v. Boyle, 342 U.S. 1, 6-7 (1951) (where, in the context of the Eight Amendment, the bail hearing was deemed a crucial part of the criminal proceeding).

As plaintiff's constitutional rights, namely his Fifth Amendment right against self-incrimination, attached during the preliminary bail hearing, he has an actionable § 1983 claim that is separate and apart from the use of his allegedly coerced testimony during the grand jury proceeding. Therefore, defendant Clay is not entitled to complete absolute immunity on this of the Fifth Amendment claim.

## ii. Qualified Immunity

Defendants argue that the defendant Clay is still entitled to qualified immunity, despite plaintiff's allegations that he was intoxicated at the time of the interview. Plaintiff maintains his "confession" was the product of substantial coercion by defendant Clay, namely that he was severely inebriated at the time, ingested drugs the day before, and has limited cognitive abilities (an argument made for the first time). Moreover, he was interrogated for several hours and denied access to counsel. The interrogation was not recorded despite the ability to do so, and no written waiver of his Miranda rights was obtained, despite existing policy to do so. Plaintiff claims that the dismissal of the indictment does not render him without relief, because the confession was coerced and

was the heart of the evidence used against him during the bail hearing and grand jury proceeding.

Accepting as true the facts alleged and drawing all reasonable inferences in plaintiff's favor, it is clear that, at this stage, qualified immunity is not appropriate.  If the alleged falsification of the confession and coercion related there to occurred, then the subsequent use against plaintiff in the preliminary bail hearing, constitutes a violation of his Fifth Amendment right against self-incrimination and no objectively reasonable public official could have thought otherwise.  See Coggins, 776 F.3d at 114.   Because the officers vehemently dispute what happened at the interview, a factual determination of their conduct, what transpired and plaintiff's state of inebriation is necessary before the Court may decide whether the defendants acted in an objectively reasonable manner. See Weaver, 40 F.3d at 537; Niemann, 911 F. Supp. 656.  Moreover, upon these disputed facts, a reasonable fact finder could conclude that it was not reasonable for an officer to believe that it was constitutional to coerce a confession and then proffer that confession during a grand jury proceeding and preliminary bail hearing.  See Higazy, 505 F.3d at 174. For the foregoing reasons, defendants' request for qualified immunity is denied.

### B.  State Tort Claims - Sixth Cause of Action

Defendants argue plaintiff's claim for intentional infliction of emotional distress must be dismissed because other than his bald assertion of same, there is no evidence that defendants' conduct constituted either extreme or outrageous conduct.  Likewise, he has put forth no evidence to satisfy even the lower standard for the tort of negligent infliction of emotional distress.  In response, plaintiff mistakenly confuses the legal standards for intentional and negligent infliction of emotional distress.

20

To be clear, plaintiff bears the burden at the summary judgment stage to put forth the facts which would arguably allow the trier of fact to find that the essential elements of the aforementioned torts existed. As to intentional infliction of emotional distress, plaintiff must show that defendants' conduct was "extreme and outrageous" and so "atrocious" as to be "intolerable in a civilized society." Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78, 104 (N.D.N.Y. 2013) (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293 (N.Y. 1983)). Plaintiff simply does not allege facts that meet this standard. And the cases cites from other district courts are not sufficiently analogous to the instant case as to be persuasive.

Likewise, with regard to negligent infliction of emotional distress, plaintiff has failed to proffer any evidence that tends to show that plaintiff ever, at the very least, feared for his physical safety. Dawkins v. Williams, 413 F. Supp. 2d 161, 179 (N.D.N.Y. 2006). Without this evidence, no fact finder would be able to find that the essential elements of negligent infliction of emotional distress existed.

For the foregoing reasons, plaintiff's state tort claims must be dismissed.

### C. Punitive Damages

Defendant Clay argues that punitive damages are inappropriate in this case, where the evidence is devoid of evidence showing that defendant Clay acted with evil intent or callous indifference to plaintiff's rights. Plaintiff contends that the facts of the case are sufficiently egregious to support a finding that defendants acted with reckless disregard of plaintiff's protected rights.

Here, plaintiff maintains defendant Clay took advantage of the fact that plaintiff was known as "town drunk" and could not stand up for himself. His "confession" was the

product of substantial coercion by defendant Clay, namely that he was severely inebriated at the time, was interrogated for several hours and denied access to counsel. The interrogation was not recorded despite the ability to do so, and no written waiver of the alleged providing of his Miranda rights was obtained, despite a policy to do so.

Viewing the facts most favorably to the plaintiff, a trier of fact could reasonably conclude that defendant Clay acted with "callous indifference" to plaintiff's rights. <u>See</u> <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983). For the foregoing reasons, plaintiff's claim for punitive damages survives for trial.[4]

### D. <u>Remaining Claims - Fourth and Seventh Causes of Action</u>

Plainly stated, defendant fails to address two of plaintiff's causes of action. Defendants do not raise arguments against the fourth cause of action, which raises a <u>Monell</u> claim against the City of Gloversville, or the seventh cause of action, which alleges negligent supervision and retention of an employee against defendants Officer Beaudin and the City.

As noted above, plaintiff agreed to a partial discontinuance of certain causes of action prior to the motion for summary judgment. ECF No. 86. And in that discontinuance, plaintiff stipulated to the discontinuance of his <u>Monell</u> claim against Officer Beaudin. However, it was plainly stated that he retained his ability to litigate the <u>Monell</u> claim against the City and the negligent supervision and retention of employee claim against Officer Beaudin and the City. ECF No. 91. In fact, plaintiff addresses the sufficiency of these two claims in his opposition papers. <u>See</u> ECF No. 75.

---

[4] There can, of course, be no punitive damages against defendant City of Gloversville. <u>See</u> <u>Ciraolo v. City of New York</u>, 216 F. 3d 236 (2d Cir. 2000).

22

Defendants utterly failed to address either of these remaining claims in their inital moving papers and further tacitly acknowledge this failure in addressing the Monell claim for the first time in their reply papers. Therefore, the Monell claim against the City of Gloversville survives for trial. Am. Hotel Int'l Group, Inc., 611 F. Supp. 2d at 375. And defendants have never addressed the negligent supervision and retention claims against defendants Officer Beaudin and the City. Therefore, these claims likewise survive for trial.

Finally, John Does 1-5 are dismissed from the case for failure to prosecute, as plaintiff did not identify the John Doe defendants by the end of discovery. See Sachs v. Cantwell, 2012 U.S. DIST. LEXIS 125335, at *10 (S.D.N.Y. Sept. 4, 2012); Delrosario v. City of New York, 2010 U.S. Dist. LEXIS 20923, at *5 ("Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice.").

## 2. **Plaintiff's Motion to Amend the Complaint**

Defendants first argue that plaintiff's motion for leave to amend the complaint should be denied because plaintiff has unduly delayed in seeking the amendment. And despite the liberal pleading standards set forth in Rule 15, a party's motion for leave to amend a pleading may be denied if that party has shown "undue delay" in seeking the amendment. Foman, 371 U.S. at 182. To that end, a district court "plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). When a "considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect

23

and delay." <u>Sanders v. Thrall Car Mfg. Co.</u>, 582 F.Supp. 945, 952 (S.D.N.Y. 1983), <u>aff'd</u>, 730 F.2d 910 (2d Cir. 1984); <u>see also</u> <u>Cresswell</u>, 922 F.2d at 72 ("The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay.").

In this case, a significant amount of time passed between the interposition of the complaint on July 11, 2011 and the filing of the October 23, 2014 cross-motion to amend/correct the complaint.  To explain this three year delay, plaintiff asserts that his proposed amendments are based on information acquired during discovery and that several causes of action were earlier deemed untenable.  Pl.'s Cross Motion to Amend, ECF No. 83-5, 5.  Plaintiffs aver that it was not until discovery was complete that he ascertained that an additional cause of action "should be more precisely pled, namely, the Violation of the Right to a Fair Trial."  <u>Id</u>.  Plaintiff further acknowledges that "[t]he facts underlying these claims were addressed throughout the litigation, and arise out of the same allegations made in [his] original complaint."  <u>Id</u>.

However, in addition to the three year delay in seeking to amend the complaint, the procedural status of the case must also be considered.  <u>See</u> <u>AMA v. United Healthcare Corp.</u>, 2006 U.S. Dist. LEXIS 93864, *9-10 (S.D.N.Y. Dec. 29, 2006).  There are numerous instances in which motions for leave to amend were denied because discovery had already been completed and post-discovery motions for summary judgment had been submitted. <u>See, e.g.</u>, <u>Cresswell</u>, 922 F.2d at 72 (affirming denial of motion for leave to amend where discovery had closed and plaintiff offered no valid excuse for delay); <u>Krumme v. Westpoint Stevens, Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998) (affirming denial of motion for leave to amend when the case was "near resolution and discovery had been completed"); <u>C.L.- Alexanders Laing & Cruickshank v. Goldfeld</u>, 739 F. Supp. 158, 166

(S.D.N.Y. 1990) (denying motion for leave to amend six months after the close of discovery and after the submission of the defendant's post-discovery motion for summary judgment).

In addition to setting deadlines for amending the pleadings, motions were granted to permit extensions during discovery and for substantive motions. <u>See</u> ECF Nos. 33, 60, 64, 67. And courts have denied such motions to amend for violating court mandated deadlines. <u>See, e.g.</u>, <u>Nas Electronics, Inc. v. Transtech Electronics PTE, Ltd.</u>, 262 F. Supp. 2d 134, 150-51 (S.D.N.Y. 2003); <u>Champlain Enterprises, Inc. v. United States</u>, 945 F. Supp. 468, 475 (N.D.N.Y. 1996).

Thus, in addition to the length of time that has passed since the filing of the original complaint and the cross motion to amend, this case is at a later procedural stage and upon deciding the motion for summary judgment, is ready for trial. Discovery was extended numerous times and was completed. The scheduling order and deadline for filing motions to amend the pleadings has expired. <u>See</u> ECF No. 33.

While it is always preferential to address the merits of the motion, it is unfortunately the case that plaintiff has exhibited undue delay in filing the proposed amended complaint and has not submitted satisfactory reasons for the delay. Indeed, plaintiff admits that the facts underlying the proposed amended complaint and new causes of action were continuously addressed throughout litigation and arise out of the same allegations made in the original complaint. For these reasons, the Court must exercise its discretion to deny plaintiff's motion for leave to amend because of delay.

## V.   **CONCLUSION**

In reviewing both defendants' motion for summary judgment and plaintiff's cross motion for leave to amend the complaint, each claim was analyzed independently and in accordance with the proper standard.

Therefore it is

ORDERED that

1.  Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part (ECF No. 70);

2.  Plaintiff's first cause of action for false arrest, sounding in federal law, is **DISMISSED** in its entirety, pursuant to the Stipulation of Discontinuance (ECF No. 91);

3.  Plaintiff's second cause of action for malicious prosecution, sounding in federal law, is **DISMISSED** in its entirety, pursuant to the Stipulation of Discontinuance (ECF No. 91);

4.  Plaintiff's third cause of action against defendant Officer Anthony Clay, alleging the violation of his Fifth Amendment right against self-incrimination remains for trial;

5.  Plaintiff's fourth cause of action, alleging a Monell claim is **DISMISSED** as to defendant Officer Edgar Beaudin, pursuant to the Stipulation of Discontinuance (ECF No. 91), and remains for trial as to defendant City of Gloversville;

6.  Plaintiff's fifth cause of action for malicious prosecution and false arrest, sounding in state law, is **DISMISSED** in its entirety, pursuant to the Stipulation of Discontinuance (ECF No. 91);

7.  Plaintiff's sixth cause of action for intentional infliction of emotional distress and negligent infliction of emotional distress, is **DISMISSED** in its entirety;

8.  Plaintiff's seventh cause of action for negligent supervision and retention of employees remains for trial, as to defendants Officer Edgar Beaudin and City of Gloversville;

9.  All causes of action against defendant Officer James Lorenzoni are **DISMISSED**, pursuant to the Stipulation of Discontinuance (ECF No. 91);

10.  John Does 1-5 are **DISMISSED**;

11.  Plaintiff's demand for punitive damages remains for trial; and

12.  Plaintiff's cross motion for leave to amend/correct the complaint is **DENIED** (ECF No. 83).

It is so ORDERED.

_____
United States District Judge

Dated:   March 23, 2016
         Utica, New York

A jury trial of the third, fourth and seventh causes of action, as set forth above, is scheduled for Monday, June 20, 2016, in Utica, N.Y.  Pretrial submissions shall be filed no later than Monday, June 13, 2016 at 5:00 p.m.  The title of the case is now Derek Kenney, plaintiff v. Anthony Clay, Edgar Beaudin and the City of Gloversville, defendants.